**Gloria Ann PORTER and Lavercus Porter, a minor by and through his next friend, Gloria Ann Porter, Plaintiffs,**

v.

**William JAMESON, Individually and in his official capacity as a City of Montgomery police officer; The City of Montgomery, Defendants.**

Civ. A. No. 94–D–1120–N.

United States District Court, M.D. Alabama, Northern Division.

May 12, 1995.

Dan W. Taliaferro, Allen R. Stoner, Montgomery, AL, for plaintiffs.

Thomas C. Tankersley, City of Montgomery Legal Dept., George B. Azar, Dorothy F. Norwood, Montgomery, AL, for defendants.

## MEMORANDUM OPINION

De MENT, District Judge.

Before the court is Defendants' Motion for Summary Judgment filed January 24, 1995. A supporting brief accompanied Defendants' motion. On April 10, 1995, Plaintiffs filed a response and supporting brief in opposition to Defendants' motion. After a full and complete review of all the relevant evidence and law, as well as the factual background and pleadings, the court concludes that Defendants' motion is due to be granted. In addition, Plaintiffs' causes of action arising under Alabama law are due to be dismissed without prejudice.

### Jurisdiction & Venue

Plaintiff alleges that the Defendants abridged certain rights guaranteed by the United States Constitution; therefore, jurisdiction is proper under 28 U.S.C. § 1331.[1] Plaintiffs also allege violations of Alabama statutory and common law. These purported violations transpired during the same transaction and occurrences as the alleged constitutional deprivations; therefore, the court may assert supplemental jurisdiction over Plaintiffs' state law claims. *See* 28 U.S.C. § 1367(a).[2] Personal jurisdiction of Defendants' person and venue are not contested.

### Factual Background

The precise facts are not particularly clear as the parties produce conflicting accounts of what actually transpired on the evening of September 10, 1993. However, it is clear that two persons, Gloria Ann and Lavercus Porter (collectively the "Plaintiffs"), were injured allegedly by projectiles from the weapon of Defendant William Jameson (hereinafter Officer "Jameson"). Moreover, based on the pleadings and determinable facts, a crystal clear and detailed factual picture is not germane to the disposition of this action.

Defendants contend that Officer Jameson of the Montgomery Police Department (hereinafter the "MPD") was on duty as a member of the Retake Our Turf ("ROT") unit.[3] According to Defendants, at approximately 8:00 p.m. on the evening of September 10, 1993, Officer Jameson and other members of ROT were talking to a suspect in the housing project of Victor Tulane Court when they heard small arms fire. Allegedly, the ROT unit proceeded at that time to the area of the small arms fire and heard more shots. Officer Jameson then exited the van on foot and ahead of the other members of the unit. According to the Defendants, a male came out of an alley carrying a large nickel plated pistol in his hand and proceeded down the sidewalk in front of Officer Jameson. Defendants claim that Officer Jameson thrice identified himself as a police officer and instructed the alleged suspect to drop the weapon. Jameson claims that following the third identification and instruction, the suspect turned, raised the weapon, and fired at him. Officer

---

1. Section 1331 provides, "[t]he [federal] district courts shall have original jurisdiction of all civil actions arising under the ... laws ... of the United States." 28 U.S.C. § 1331.

2. Pursuant to § 1367,
 "... in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."
 28 U.S.C. § 1367(a).

3. ROT is a drug enforcement team operating in high crime areas of Montgomery.

Jameson returned fire and chased the suspect.[4] According to Defendants, this was the only occasion in which Jameson fired his weapon. After allegedly losing the suspect in the darkness, Jameson immediately dispatched a bulletin on the fleeing individual and returned to his comrades to look for the suspect.

Jameson claims that he found fellow officers surrounding a subject on the ground. This person was Gloria Porter who appeared to have suffered a gunshot wound to the leg. Her infant son Lavercus Porter suffered gunshot injury to the buttocks area. Officer Jameson claims that he never saw Ms. Porter or any other bystander at the time he returned fire on the alleged suspect.

Plaintiffs produce two affiants, Rodney Battle, the fleeing suspect, and Eugene Mays (hereinafter "Mays"), who contend that Battle never fired at or in the direction of Jameson. Affiant Mays, a resident of Tulane Court and witness to the events giving rise to this action, testifies that, while sitting in an automobile, he observed Battle standing under a street light. Mays states that, while standing under the streetlight, Battle discharged a firearm in the air and in a "non-threatening" manner. According to Mays, after firing several rounds, Battle then disappeared behind the complex known as 568B–570B Smythe Curve. After a lapse of "one or two minutes," Mays asserts that Battle reemerged from the obscurity of the complex and shadows. Battle then discharged his weapon once more in a manner similar to the previous firings. Mays states that, shortly thereafter, he heard small arms fire originating from behind the complex—the same area vacated by Battle. He (Mays) asserts that Battle began to run, and, as Battle passed the automobile in which he was sitting, Mays claims to have noticed that Battle was unarmed. In his affidavit, Mays remarks that Officer Jameson continued firing at Battle even though Battle never faced Officer Jameson.

Plaintiffs were struck by rounds near a hair studio near the corner of Highland Avenue and Hall Street. According to Plaintiffs' account, and Defendants do not deny that,

Battle never fired a shot in the direction of Hall Street. Jameson's weapon discharged copper-jacketed ammunition, and projectile casings of this type were discovered near the area which Plaintiffs were wounded.

Plaintiffs accord great weight to the fact that Jameson may have violated the MPD's deadly force policy. According to Affiant Mays, Battle appeared to have no weapon in his possession as he passed the automobile in which he was sitting. Mays claims that Jameson fired several shots after Plaintiff began to run, but at no time during the exchange did Plaintiff attempt to face Officer Jameson.

On August 29, 1994, Gloria Porter and Lavercus Porter, by his next friend, Gloria Porter, instituted the above-styled action against Officer Jameson and the City of Montgomery. Porter alleges that Defendant Jameson violated the following constitutional guarantees: freedom from excessive and unreasonable force; freedom from deprivation of liberty without due process of law; freedom from cruel and unusual punishment; freedom from corporal punishment; and freedom from unreasonable search and seizure. Plaintiffs aver that the City of Montgomery is liable for the acts of Jameson because it maintains a "policy" or "custom" of "deliberate indifference" to those who come in contact with members of the Montgomery Police Department (hereinafter "MPD"). Also, Plaintiffs bring actions under Alabama common law, namely, assault and battery and negligence. Plaintiffs contend that as consequence of said deprivations and violations, they suffered physical wounds and severe emotional distress and incurred medical expenses.

Subsequently, Defendants filed the pleading presently under review. Defendants claim that Defendant Officer Jameson is entitled to qualified immunity and that the City of Montgomery is due to be dismissed because it maintains no "policy" or "custom" which demonstrates a "deliberate indifference" to the well being of those coming into contact with members of the MPD. Also, Plaintiffs aver that summary judgment is

---

4. Officer Jameson admits that he fired several shots at Battle. See Jameson aff. p. 2.

appropriate on Plaintiffs' state law causes of action because no genuine issue of fact exists regarding negligent conduct or assault and battery on the part of Officer Jameson.

### Summary Judgment Standard

On a motion for summary judgment, the court is to construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). Summary judgment can be entered on a claim only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). As the Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The trial court's function at this point is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (citations omitted). A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510.

The party seeking summary judgment has the initial burden of informing the court of the basis for the motion and of establishing, based on relevant "portions of 'the pleadings, depositions, answers to interrogatories, and admissions in the file, together with affidavits, if any,'" that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552–53. Once this initial demonstration under Rule 56(c) is made, the burden of production, not persuasion, shifts to the nonmoving party. The nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553; *see also* Fed.R.Civ.P. 56(e).

In meeting this burden the nonmoving party "must do more than simply show that there is a metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Corp. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). That party must demonstrate that there is a "genuine issue for trial." Fed. R.Civ.P. 56(c); *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356. An action is void of a material issue for trial "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356. *See also Anderson*, 477 U.S. at 249, 106 S.Ct. at 2510–11.

### Discussion & Analysis

### I. Defendant Officer Jameson—Qualified Immunity

Plaintiffs allege that Officer Jameson violated section 1983, which accords private citizens recourse in the wake of constitutional deprivations carried out by individuals acting under the color of state law.[5] A section 1983 claim is predicated on two indispensable elements:

---

5. Section 1983 provides in relevant part that: "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution ... shall be liable to the party injured ..." 42 U.S.C. § 1983.

first, the conduct complained of must have been committed by a person acting under state law; second, this conduct must have deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or the laws of the United States.

*Whitehorn v. Harrelson,* 758 F.2d 1416, 1419 (11th Cir.1985) (citing *Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 1912, 68 L.Ed.2d 420 (1981)). It is undisputed that Officer Jameson was acting under color of state law on the evening of September 10, 1993. However, Jameson asserts that he is entitled to qualified immunity as a matter of law because the actions complained of by the Porters fall within his discretionary authority and the actions of which Plaintiffs complain were not clear constitutional violations on September 10, 1993.

The United States Supreme Court has held that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known." *Rich v. Dollar,* 841 F.2d 1558, 1563 (11th Cir.1988) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)), *see also Tindal v. Montgomery County Commission,* 32 F.3d 1535, 1539 (1994). According to the Supreme Court in *Malley v. Briggs,* 475 U.S. 335, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986), qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley,* 475 U.S. at 341, 106 S.Ct. at 1096, *see also Barts v. Joyner,* 865 F.2d 1187, 1190 (11th Cir.1989) ("[t]he *Harlow* decision sets up a bright-line test that is a powerful constraint on causes of action under section 1983.").[6]

The United States Eleventh Circuit Court of Appeals has established the following test when determining whether a government official is entitled to qualified immunity:

1. First, the official must prove that "he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred."

2. Should the defendant satisfy his burden of moving forward with the evidence, the burden shifts to the plaintiff to show lack of good faith on part of the defendant official. The plaintiff satisfies this burden by sufficiently demonstrating that the official's actions "violated clearly established constitutional law."

*Zeigler v. Jackson,* 716 F.2d 847, 849 (11th Cir.1983).

 An official satisfies the first element of the two-prong *Zeigler* test and, shifts the burden to the plaintiff by demonstrating ". . . . 'objective circumstances which would compel the conclusion that his actions were undertaken pursuant to the performance of his duties and within the scope of his authority.' " *Rich,* 841 F.2d at 1563–64 (quoting *Barker v. Norman,* 651 F.2d 1107, 1121 (5th Cir.1981)).[7] Therefore, logically speaking, an officer violating official policy may not benefit from the qualified immunity defense.

Pursuant to the MPD's deadly force policy, a member officer is prohibited from using his or her firearm where "[t]he risk to the public, generally and specifically, is greater than the threat to the member or other person or society generally."[8] It is undisputed that Jameson fired his weapon during the incident at issue. However, Battle contends that he was unarmed and in a non-confrontational posture when Officer Jameson fired at him. If an officer violates his own policy, the inference may be drawn that such officer was not acting within the scope of his discretionary

---

**6.** As articulated by the Eleventh Circuit:

While qualified immunity almost always applies in damage claims against government actors in their individual capacities, the defense is a narrow one, leaving plaintiffs other avenues of relief. Plaintiffs remain free (subject to Eleventh Amendment constraints) to seek money damages against government actors in their official capacity. Plaintiffs may also seek injunctive relief.

*Lassiter v. Alabama A & M University,* 28 F.3d 1146, 1149 n. 2 (11th Cir.1994).

**7.** The United States Eleventh Circuit Court of Appeals has adopted as binding precedent the decisions of the former Fifth Circuit rendered before October 1, 1981. *Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981) *(en banc).*

**8.** MPD Reg. § 2.471.

authority and, therefore, may not be shielded from liability for injuries stemming from those acts.

■ The objective reasonableness test of *Harlow* informs that discretionary functions are those which objectively appear to be within the official's authority. *Harlow,* 457 U.S. at 818, 102 S.Ct. at 2738. Plaintiffs produce the affidavits of Mays and Battle who testify that Battle was unarmed during the Battle–Jameson altercation. Furthermore, both affiants assert that Battle never faced Jameson while the latter discharged his weapon. However, Officer Jameson alleges that Battle fired at him once after he identified himself as a police officer. In this regard, the parties' accounts are not materially divergent. It is not disputed that just before Officer Jameson discharged his pistol initially, Battle fired a weapon just moments before. While Jameson claims that Battle raised the weapon, pointed it towards him and fired a shot, Mays testifies that Battle pointed his weapon toward the sky. Whatever the case, Battle raised his weapon and fired it at least once and Officer Jameson returned fire soon thereafter. Furthermore, Defendant Jameson asserts, and Plaintiffs offer no evidence or argument to the contrary, that he was aware of no other persons in the area when he fired shots at Battle. Given the testimony, evidence, and pleadings, the court, even when peering through the lens of 20/20 hindsight, is unable to conclude that Jameson's conduct ran afoul to the MPD's deadly force policy, which requires a balancing of several factors. Neither can the court conclude, in this specific case, that Jameson acted beyond his discretionary authority. Now the court must shift its focus to the second prong of the *Zeigler* analysis.

■ In order to defeat Jameson's claim for qualified immunity, Plaintiffs must demonstrate that Jameson's actions on September 10, 1993, violated clearly established constitutional or statutory rights of which a reasonable officer would have known. *See*

*Barts,* 865 F.2d at 1190 (citing *Mitchell v. Forsyth,* 472 U.S. 511, 527–28, 105 S.Ct. 2806, 2816, 86 L.Ed.2d 411 (1985)) (once the qualified immunity defense is raised, the plaintiff bears the burden of demonstrating that the federal "rights" allegedly violated were "clearly established"). Plaintiffs allege that Defendant Jameson violated their right to substantive due process of law.[9] Substantive due process is nebulous and difficult to define. *See Oladeinde v. City of Birmingham,* 963 F.2d 1481, 1486 (11th Cir.1992). The Supreme Court has held that substantive due process is violated only when the government's conduct "offend those canons of decency and fairness which express the notions of justice of English-speaking peoples even toward those charged with the most heinous offenses." *Faucher,* 891 F.2d at 871 (citing *Malinski v. New York,* 324 U.S. 401, 416–17, 65 S.Ct. 781, 788–89, 89 L.Ed. 1029 (1945)). If a state official's behavior "shocks the conscience" or constitutes force that is so brutal as to offend hardened sensibilities, such behavior impugns the substantive due process arm of the constitution. *Id.* (citing *Rochin v. California,* 342 U.S. 165, 172–73, 72 S.Ct. 205, 209, 96 L.Ed. 183 (1952). *See also, Barnett v. Housing Authority of the City of Atlanta,* 707 F.2d 1571 (11th Cir.1983) (substantive due process violated when housing authority scapegoated plaintiff for his part in a housing controversy, and then engaged in a protractive postponement of plaintiff's access to an administrative appeal procedure); *Gilmere v. City of Atlanta,* 774 F.2d 1495 (11th Cir.1985) (police deprived plaintiff of substantive due process by beating and fatally shooting him without provocation). Simply put, Officer Jameson is entitled to qualified immunity if the Porters fail to produce sufficient evidence that, when viewed in the light most favorable to them, Jameson violated their clearly established Fourteenth Amendment substantive due process rights of which a reasonable officer would have been aware. *Belcher v. City of Foley,* 30 F.3d 1390, 1395 (11th Cir.1994).

---

**9.** As heretofore enumerated, Plaintiffs allege other constitutional deprivations—freedom from excessive and unreasonable force, freedom from cruel and unusual punishment, freedom from corporal punishment and freedom from cruel punishment. However, the court finds that these claims are not actionable because Plaintiffs neither allege nor demonstrate any intentional misconduct directed toward them.

■ In order for a right to be clearly established, "[t]he contours of that right must be sufficiently clear that a reasonable officer would understand what he is doing is wrong." *Anderson v. Creighton*, 483 U.S. 635, 639–40, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). Furthermore, the unlawfulness of the act must be apparent in light of pre-existing law. *See id.* The Eleventh Circuit has stated: "[i]f case law, in factual terms, has not staked out a bright line, qualified immunity almost always protects the defendant." *Post v. City of Fort Lauderdale*, 7 F.3d 1552, 1557 (11th Cir.1993). "For the law to be clearly established to the point that qualified immunity does not apply, the law must have earlier been developed in such a concrete and factually defined context to make it obvious to all reasonable government actors, in the defendant's place, that 'what he is doing' violates federal law." *Lassiter v. Alabama A & M University*, 28 F.3d 1146, 1149 (11th Cir.1994) (citing *Anderson*, 483 U.S. at 640, 107 S.Ct. at 3039).

In the recent decision of *Rodgers v. Horsley*, 39 F.3d 308 (11th Cir.1994), the United States Eleventh Circuit Court of Appeals stated that "the question. . . . in all qualified immunity cases, is fact specific. . . ." *Horsley*, 39 F.3d at 311. In *Horsley*, an involuntarily civilly committed patient who was allegedly raped at a hospital brought a section 1983 action against the director of the hospital and chief administrator of the admissions unit of the hospital for failure to provide her with adequate security and failure to adequately train and supervise subordinates. Mona Rodgers, the plaintiff in *Horsley*, was left alone for fifteen minutes in the hospital's smoking room, during which time she was allegedly raped. Mona Rodgers submitted evidence that several incidents of sexual conduct between patients had been reported, but the occurrences were rare. Rodgers was on close watch status when the alleged rape occurred.

The *Horsley* court stated that the question was not whether, in general, involuntarily committed patients have a legal interest un-der Amendment Fourteen to safe conditions, but rather,

". . . in May 1991, was it clearly established in this circuit that it was unconstitutional for a mental institution to fail to supervise a patient for fifteen minutes in the smoking room, when she was on close watch status for a health problem, when the institution had some history of some "sexual contact" involving patients other than plaintiff but no history of rape in the past twelve years, where a previous patient who was to be similarly monitored disappeared, apparently escaped through a bathroom window, and fell to her death . . . ?"

*Horsley*, 39 F.3d at 311. The *Horsley* court answered the foregoing question in the negative and held that the defendants were entitled to qualified immunity.[10] *Id.*

Here, Defendants assert, and Plaintiffs do not deny, that Officer Jameson was not cognizant of Plaintiffs' presence when he fired his weapon. Therefore, even assuming that Jameson fired the rounds which caused Plaintiffs' injuries, the court concludes that Plaintiff did not purposely injure Ms. Porter and/or her minor child. Furthermore, the court finds that the Porters' injuries are the unfortunate and unintended results of an attempted apprehension of a fleeing suspect.

■ Plaintiffs point to no United States Supreme Court, former Fifth Circuit or Eleventh Circuit precedent, in place at the time the Porters were shot, which establishes that a police officer, while acting within the scope of his or her duty, violates a bystander's substantive due process rights when such bystander is injured accidentally when the officer is in pursuit of a fleeing suspect. Instead, Plaintiffs cite a Fourth Circuit case which holds:

". . . conduct which shocks the conscience . . . or conduct which 'amounts to a brutal and inhumane abuse of official power literally shocking to the conscience', . . . violates the substantive guarantees of the Due Process Clause . . ."

---

**10.** In *Horsley*, Mona Rodgers relied on *Youngberg v. Romeo*, 457 U.S. 307, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982), which held that involuntarily committed patients had a right to reasonably safe conditions of confinement.

*Temkin v. Frederick County Commissioners,* 945 F.2d 716, 720 (4th Cir.1991) (citations omitted); however, even assuming its applicability, "authority from one circuit of the United States Court of Appeals is not binding upon another circuit." *Generali v. D'Amico,* 766 F.2d 485, 489 (11th Cir.1985) (citing *U.S. v. Diamond,* 430 F.2d 688 (Cir. 1970). The arguments employed by Plaintiffs to defeat Jameson's qualified immunity defense is anemic and ineffective. Without any binding authority in the controlling jurisdiction proclaiming that Jameson's alleged conduct on the night of September 10, 1993, violated Plaintiff's substantive due process rights, the court finds that to conclude that Jameson violated clearly established law is a *non sequitur.* Therefore, the court concludes that Plaintiff has not carried its burden of demonstrating that Jameson's conduct on the evening of September 10, 1993, violated clearly established constitutional or statutory law.

## II. City of Montgomery—Deliberate Indifference

A local governing body can be sued directly under section 1983 for monetary, declaratory or injunctive relief when the alleged unconstitutional action "implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body." *Monell v. Dept. of Social Services of New York City,* 436 U.S. 658, 690, 98 S.Ct. 2018, 2035–2036, 56 L.Ed.2d 611 (1978). Furthermore, local governing bodies may be sued for constitutional deprivations emanating from "custom" although such a custom is not the product of formal adoption via the body's official decisionmaking regime.[11] *Id.,* 436 U.S. at 690–91, 98 S.Ct. at 2036.

In limited circumstances, a municipality's "failure to train" its officials can give rise to a viable § 1983 action. *City of Canton v. Harris,* 489 U.S. 378, 387, 109 S.Ct. 1197, 1204, 103 L.Ed.2d 412 (1989). In *City of Canton,* the Court held that "the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton,* 489 U.S. at 388, 109 S.Ct. at 1204. Therefore, to prevail under a section 1983 action, Jameson must demonstrate that the City of Montgomery's alleged omission(s) and/or commissions in failing to adequately train its police officers evidences a "deliberate" or "conscious" decision not to so train. *See id.,* 489 U.S. at 389, 109 S.Ct. at 1205. As Justice Brennan stated: "municipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made among various alternatives" by local policymakers. *Pembaur v. Cincinnati,* 475 U.S. 469, 483, 106 S.Ct. 1292, 1300–01, 89 L.Ed.2d 452 (1986) (plurality). However, a section 1983 plaintiff cannot rely on a theory of respondeat superior to hold a city liable for the individual actions of its police officers. *Monell,* 436 U.S. at 691, 98 S.Ct. at 2036; *Hearn v. City of Gainesville,* 688 F.2d 1328, 1334 (11th Cir.1982). Neither can a municipality be held liable "solely because it employs a tortfeasor." *Busby,* 931 F.2d at 776 (quoting *Monell,* 436 U.S. at 691, 98 S.Ct. at 2036). In order to recover against a city or municipality, a plaintiff must demonstrate that the alleged constitutional deprivation occurred pursuant to a custom or policy of the municipality. *Monell,* 436 U.S. at 694, 98 S.Ct. at 2037; *Gilmere v. City of Atlanta,* 774

---

**11.** In *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970), the Court stated:

"Congress included customs and usages [in section 1983] because of the persistent and widespread discriminatory practices of state officials ... Although not authorized by written law, such practices of state officials could well be so permanent and well settled as to constitute a 'custom or usage' with the force of law."

*Adickes,* 398 U.S. at 167–68, 90 S.Ct. at 1613. As the United States Supreme Court has explained,

"[i]t would be a narrow conception of jurisprudence to confine the notion of 'laws' to what is found written on the statute books, and to disregard the gloss which life has written upon it. Settled state practice ... can establish what is state law ... Deeply embedded traditional ways of carrying out state policy ... are often tougher and truer law than the dead words of the written text."

*Nashville C. & St. Louis R. Co. v. Browning,* 310 U.S. 362, 369, 60 S.Ct. 968, 972, 84 L.Ed. 1254 (1994).

F.2d 1495, 1503 (11th Cir.1985), *cert. denied*, 476 U.S. 1115, 106 S.Ct. 1970, 90 L.Ed.2d 654 (1986); *Hearn*, 688 F.2d at 1334.

■ Plaintiffs claim that the City of Montgomery maintains a "custom" or "policy" which evidences a deliberate indifference to the welfare of those private citizens with whom members of the MPD come into contact. According to the Plaintiffs, the MPD's deadly force policy contains no provision specifically addressing innocent bystander protection when a member officer is in pursuant of a fleeing suspect. While the MPD's deadly force policy does not contain the words "innocent bystander," the court finds that section 2.471 is sufficiently broad and specific to encompass the use of deadly force in the presence of innocent bystanders. As previously set forth, this provision forbids an officer to apply deadly force unless the threat posed by an assailant to the officer or the public outweighs the risk, generally and specifically, to the public from the use of deadly force. This regulation entails a delicate balancing of diametric and, often, competing concerns in precarious, ultra-sensitive and life-threatening situations.

The court is aware that no rule will remove all the risk associated with the perils of pursuing a subject who, in the subjective, but rational and reasonable, assessment of a pursuing officer, is considered armed and dangerous. However, a regulation of this nature must provide as much protection to the public and the officer as possible. In the final analysis, a law enforcement officer must be allowed to exercise sound judgment in determining whether to return fire or fire in the first instance. No rule or regulation will prevent the type occurrence which transpired on September 10, 1993. At best, a municipality can clothe well-trained police officers with the authority to react in a manner dictated by the circumstances and train them in a manner which will engender and facilitate professional decorum and eliminate the likelihood of constitutional deprivations. The

court is convinced that the City of Montgomery's "custom" and "policy" regarding its police department accomplishes these salient and indispensable objectives.[12]

■ The court notes that Gloria Porter has not presented any evidence of other bystanders being injured by gunfire when a Montgomery police officer was apprehending a suspect. Thus, this one time, single and isolated occurrence—even if the court concluded that Jameson's conduct were unconstitutional—is best characterized as aberrational and unusual and, as such, cannot give rise to an actionable section 1983 claim predicated on "deliberate indifference" for failure to adequately train police officers. *See City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823–24, 105 S.Ct. 2427, 2436, 85 L.Ed.2d 791 (1985) ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributable to a municipal policymaker"). To find that the City of Montgomery has exhibited a "deliberate indifference" to persons who come into contact with officers of the MPD, and subject it to liability, is more consanguineous to holding it liable under the theory of respondeat superior than for actions directly attributable to it. Such a finding is in direct conflict with *Monell* and its progeny.

### Conclusion

Plaintiff directs the court's attention to no statutory or precedential authority which was in existence on September 10, 1993, which deemed it a deprivation of the constitutional guarantee to substantive due process when an officer accidentally shoots a bystander while such officer is in pursuit of a fleeing suspect; therefore, the court finds that Officer Jameson is entitled to qualified immunity.[13] Moreover, the court finds that the City of Montgomery does not maintain a "policy"

---

**12.** It is also noteworthy that the facts and allegations presented to the court do not support the slightest inference that the City of Montgomery ever disregarded its deadly force policy or neglected to train its police officers to conform their conduct to said policy.

**13.** The court expresses no opinion on whether it would have been a constitutional deprivation if the alleged suspect were injured under a similar set of facts and occurrences.

or "custom" of "deliberate indifference" to the safety of its citizenry which comes into contact with members of the MPD.[14] Accordingly, the court finds that Defendants' motion for summary judgment is due to be granted.

The court points out that it does not here rule on Plaintiff's state law causes of action and offers no opinion regarding them. Because there no longer exists any viable federal cause(s) of action and complete diversity does not exist, the court finds that Plaintiff's state law causes of action are due to be dismissed *without prejudice.*

A judgment in accordance with this memorandum opinion shall be entered separately.

DONE.

---

**14.** The court speaks only to the facts and circumstances and theories underlying the action at bar.