RODDY, Anne, Roddy, John, Plaintiffs,

v.

CANINE OFFICER, Officer # 2, Indianapolis Police Department—Dismissed 8/6/02, Indianapolis, City of, Defendants.

No. IP 02–0547–C–H/K.

United States District Court, S.D. Indiana, Indianapolis Division.

Nov. 18, 2003.

## ADOPTION OF RECOMMENDATION

HAMILTON, District Judge.

The Magistrate Judge submitted his Report and Recommendation. Counsel were afforded due opportunity pursuant to statute and the rules of this court to file objections. No objections were filed. The court, having considered the Magistrate Judge's Report, and being duly advised, approves and adopts the Magistrate Judge's Report and Recommendation.

Accordingly, (1) Plaintiffs' motion for leave to amend their complaint is DENIED; (2) Defendants' motion for summary judgment with respect to the individual defendants Canine Office and Officer # 2 is GRANTED with respect to all claims; (3) Defendants' motion for summary judgment with respect to Defendant City of Indianapolis is GRANTED with respect to Plaintiffs' 42 U.S.C. § 1983 claims; and (4) Plaintiffs' remaining state claims against the City of Indianapolis are REMANDED to Marion County Superior Court.

## REPORT AND RECOMMENDATION ON MOTION FOR SUMMARY JUDGMENT AND MOTION TO AMEND COMPLAINT

BAKER, United States Magistrate Judge.

### I. Introduction.

On April 27, 2001, during the chase and apprehension of a suspected car thief, an

Indianapolis Police Department canine officer's dog bit and held down Plaintiff Anne Roddy ("Roddy"), allegedly causing her permanent physical injuries. Plaintiffs sued the Defendants, two unnamed officers and the City of Indianapolis (the "City"), in the Marion Superior Court alleging various claims under Indiana state law, as well as federal claims brought pursuant to 42 U.S.C. § 1983.[1] The Defendants removed the action to this Court, and filed a motion for summary judgment. Defendants' motion argues in part that Plaintiffs failed to identify the individual officers within the statute of limitations, and that therefore any claims against these officers are untimely. Plaintiffs' motion to amend their complaint to identify the unnamed officers is also pending before the Court.

For the reasons set forth below, the Magistrate Judge recommends that, with respect to the unnamed Defendants, Plaintiffs' motion for leave to file amended complaint be DENIED and Defendants' motion for summary judgment be GRANTED in its entirety. The Magistrate Judge further recommends that Defendants' motion for summary judgment with respect to Plaintiffs' federal claims against the City be GRANTED. Finally, the Magistrate Judge recommends that the Court decline to exercise supplemental jurisdiction over Plaintiffs' remaining state law claims against the City.

## II. Summary Judgment Standard.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.

R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Illinois Cent. R. Co. v. South Tec Development Warehouse, Inc.,* 337 F.3d 813, 816 (7th Cir.2003). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Abrams v. Walker,* 307 F.3d 650, 653 (7th Cir.2002), *citing Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The Court construes all facts and draws all reasonable inferences in the light most favorable to the nonmoving party. *Butera v. Cottey,* 285 F.3d 601, 605 (7th Cir.2002).

Because the purpose of summary judgment is to isolate and dispose of factually unsupported claims, the non-movant must respond to the motion with evidence setting forth specific facts showing that there is a genuine issue for trial. *See Michael v. St. Joseph County,* 259 F.3d 842, 845 (7th Cir.2001). To successfully oppose the motion for summary judgment, the non-movant must do more than raise a "metaphysical doubt" as to the material facts. *See Wolf v. Northwest Ind. Symphony Soc'y,* 250 F.3d 1136, 1141 (7th Cir.2001). A scintilla of evidence in support of the non-movant's position is not sufficient to defeat a summary judgment motion; "there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505.

## III. Background.[2]

On April 27, 2001, Indianapolis Police Department ("IPD") Officer Charles Lewis and his canine partner Rex participated in a car chase on the south side of Indianapo-

---

1. Plaintiffs also sued the Indianapolis Police Department. These claims were dismissed by order of the Court on August 6, 2002. [Docket No. 16].

2. The facts are either undisputed or viewed in a light most favorable to Plaintiffs.

lis.[3] [Lewis Dep., pp. 4, 6; IPD Case Report No. 01–0048068–0001]. The individuals being chased were suspected of car theft. [IPD Case Report Nos. 01–0048068–0000, 01–0048068–0001]. The car chase ended when the suspects crashed into a pole near St. Francis Hospital. Thereafter, two suspects got out of the car, one from each side, and the driver ran through the hospital parking lot toward the emergency room entrance. [Lewis Dep., pp. 7–9, 48–49; A. Roddy Dep., pp. 38, 45–46]. Officer Lewis, who was directly behind the stolen vehicle when it crashed, arrived at the scene immediately. He retrieved his canine partner from the backseat to assist with the pursuit of the driver suspect. [Lewis Dep., pp. 8–9]. After retrieving his police dog, Officer Lewis ordered the fleeing suspect to stop, however to no avail. [Lewis Dep., p. 8].

At this same time Roddy, an employee of St. Francis Hospital, was outside the emergency room in the parking lot assisting an elderly man that had been locked out of his car. [Roddy Dep., pp. 30–31, 40]. After the suspect got out of his car, Roddy ran away fearing the suspect would grab her. [Roddy Dep., pp. 39, 42–43]. Upon hearing Officer Lewis' commands for the suspect to stop, Roddy stopped, identified herself as a hospital employee, and put her hands in the air. [Roddy Dep., pp. 43–44]. Roddy admits that the stop command did not appear to be directed at her. [Roddy Dep., p. 43; Docket No. 39, p. 2]. Thereafter, Officer Lewis released his canine partner to pursue the suspect, despite the presence of Roddy and other individuals in and around the parking lot. [Roddy Dep., pp. 45–46, 76–77, 83–84; Lewis Dep., pp. 13, 48–49]. In releasing his canine partner, Officer Lewis intended to apprehend the suspect before he could enter the hospital and cause more harm. [Lewis Dep., pp. 48–49].

However, instead of pursuing and apprehending the suspect, Officer Lewis' police dog chased Roddy. [Lewis Dep., pp. 18–22]. Officer Lewis ordered the dog to stop several times, however the dog continued to chase Roddy. [Lewis Dep., pp. 20–22]. Despite Officer Lewis' commands to stop, the dog apprehended Roddy by pulling her to the ground and ripping off her shirt and bra. [Roddy Dep., pp. 46, 70–71; Lewis Dep., pp. 18–19]. The dog apprehended and held Roddy to the ground by biting her right wrist and hand. [Lewis Dep., p. 30; Roddy Dep., pp. 65, 90]. Marion County Deputy Sheriff Christopher Taylor arrived to the scene while the police dog held Roddy down.[4] Roddy identified herself to Deputy Taylor as a hospital employee and repeatedly requested Deputy Taylor to pull off the dog. Deputy Taylor did not pull the dog off of Roddy, but instead held her at gunpoint until the Officer Lewis arrived and withdrew the dog. [Roddy Dep., pp. 47–48; Taylor Dep., pp. 8–9; Lewis Dep., pp. 23–24]. Officer Lewis verbally ordered his police dog to release Roddy's arm but the dog did not obey and Officer Lewis physically removed the dog from Roddy. [Lewis Dep., pp. 22–24]. Thereafter, Officer Lewis and his police dog continued to pursue the suspect while Deputy Taylor stayed with Roddy and sought medical attention for her. [Lewis Dep., pp. 28, 35; Taylor Dep., p. 9].

3. Officer Lewis is the same individual identified as "Canine Officer" in the caption. While Officer Lewis is not a Defendant in this matter, as explained below in Section IV.A., to prevent confusion, "Canine Officer" and "Officer Lewis", when referred to in this Report and Recommendation, are one and the same.

4. Deputy Taylor is the same individual identified as "Officer # 2" in the caption. While Deputy Taylor is not a Defendant in this matter, as explained below in Section IV.A., to prevent confusion, "Officer # 2" and "Deputy Taylor", when referred to in this Report and Recommendation, are one and the same.

The City had policies governing the use and handling of canine partners. According to these policies, officers should not release their canine partners when there is a probability that bystanders are present. [Patton Dep., pp. 38, 41–43; Lewis Dep., p. 15]. Police dogs should not be released from an officer's car even in the pursuit of a felon. [Patton Dep., p. 41]. However, when pursuing a forcible felon suspect, such as rape, murder, car-jacking, robbery, and child molestation, an officer may consider releasing his canine partner if he believes the apprehension of the forcible felon outweighs the risks of someone else getting bitten or the dog being run over by a car. [Patton Dep., p. 41].

In addition, City policy required that canine officers undergo classroom training prior to working the street.[5] Officer Lewis and his canine partner received this training. [Lewis Dep., pp. 26, 39, 45–46]. In addition, Officer Lewis and his police dog train on a daily basis and undergo monthly performance reviews to remain certified. [Lewis Dep., p. 39; Patton Dep., pp. 47–48]. However, Officer Lewis' dog had experienced several notable behaviors during his training. For example, during his initial training, the dog had problems "outing" or releasing the individual he had apprehended upon verbal command. [Lewis Dep., p. 36]. In addition, the canine had performed unsatisfactorily in oth-

er areas during training exercises. [Defs.' Resp. to Interrogs., Ex. A]. During 2001, Officer Lewis' police dog had other "bite and hold" situations where the dog did not obey Officer Lewis' verbal "out" command. In these situations, Officer Lewis had to physically remove the dog from its hold. [Lewis Dep., pp. 40–42]. Finally, during 2001, Officer Lewis' police dog bit ten other criminal suspects (three before Roddy and seven after). These instances did not involve the accidental biting of a non-suspect. [Defs.' Interrog. Resp. No. 13; Lewis Dep., p. 51].

## IV. Discussion.

As noted above, Plaintiffs have brought a variety of actions against two unnamed police officers and the City. According to Plaintiffs' complaint, the claims against the individual police officer Defendants include the following: (1) intentional tort; (2) excessive force; (3) false imprisonment; (4) strict liability for having a vicious animal; and (5) violation of 42 U.S.C. § 1983. With respect to the City, Plaintiffs have alleged claims for: (1) "vicarious liability for the tortuous conduct of its employees"; (2) "strict liability for having a vicious animal"; and (3) violation of 42 U.S.C. § 1983. [Docket No. 39, p. 3].

### A. Plaintiffs' Claims Against "Canine Officer" and "Officer # 2."[6]

Plaintiffs filed their original complaint on March 14, 2002 in the Marion Superior

5. Defendants allege that Officer Lewis and his canine received 440 hours of field training prior to patrolling the street. [Docket No. 29, p. 2]. However, Defendants' submissions to the Court cited to and provided only page 54 of Michael Patton's deposition, on which Defendants rely for this proposition. Page 54 begins with the partial answer: "So they would have received about 440 hours of training prior to being on the street." [Patton Dep., p. 54]. Defendants failed to provide the portion of Patton's deposition revealing the question that resulted in this response.

"They" could mean anyone and "440 hours of training" could refer to weapon training, driving training, or nothing to do with police work. Therefore, while Plaintiffs did not dispute this alleged fact, the Court finds that Defendants have not provided the Court with admissible evidence sufficient to allow such a conclusion.

6. Subsequent to the filing of Defendants' motion for summary judgment, Plaintiffs filed a motion for leave to file an amended complaint to substitute Indianapolis Police Department Officer Charles Lewis for "Canine Officer,"

Court for injuries arising out of an alleged police dog attack on April 27, 2001.[7] The original complaint named as Defendants "Canine Officer," "Officer # 2," the Indianapolis Police Department and the City. The applicable statute of limitations for this action is two years, which expired on April 27, 2003. [Docket No. 38, p. 2; Docket No. 41, ¶¶ 3, 4]. Plaintiffs timely filed their original complaint. [Docket No. 41, ¶ 3].

On July 14, 2003, apparently in response to Defendants' summary judgment motion, Plaintiffs filed their motion for leave to file amended complaint. By way of this motion, Plaintiffs claim to have identified "Canine Officer" as Indianapolis Police Department Officer Charles Lewis and "Officer # 2" as Marion County Sheriff's Deputy Christopher Taylor. [Docket No. 37]. Plaintiffs wish to amend their complaint to substitute Officer Lewis and Deputy Taylor for "Canine Officer" and "Officer # 2" arguing that, despite the passing of the statute of limitations, the proposed amendment relates back to the date the original complaint was filed because it "meets all the requirements of Rule 15(c)." [Docket No. 38, p. 2; Docket No. 39, p. 11].

"Section 1983 does not contain an express statute of limitations, so federal courts adopt the forum state's statute of limitations for personal injury claims." *Johnson v. Rivera,* 272 F.3d 519, 521 (7th Cir.2001), *citing Wilson v. Garcia,* 471 U.S. 261, 276, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985); *Ashafa v. City of Chicago,* 146 F.3d 459, 461 (7th Cir.1998). Plaintiffs' claims, therefore, are governed by Indiana's two-year statute of limitations for personal injury actions. *King v. One Unknown Federal Correctional Officer,* 201 F.3d 910, 913 (7th Cir.2000); Ind.Code 34–11–2–4. Plaintiffs did not seek to add Officer Lewis and Deputy Taylor as Defendants until July 14, 2003. Because the statute of limitations expired on April 27, 2003, the claims against Lewis and Taylor will only survive if the proposed amendment relates back to Plaintiffs' original complaint under Fed.R.Civ.P. 15(c)(3). *Baskin v. City of Des Plaines,* 138 F.3d 701, 703 (7th Cir.1998).

According to Rule 15(c)(3), Plaintiffs' proposed amended complaint will relate back to the date of the original complaint if: (1) Rule 15(c)(2) is satisfied;[8] and (2) "within the period provided by Rule 4(m) for service of the summons and complaint," Officer Lewis and Deputy Taylor (A) "received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party." Fed. R.Civ.P. 15(c)(3). With respect to Officer Lewis, Plaintiffs argue that each of these elements have been satisfied because "[t]he City of Indianapolis knew that Officer Charles Lewis was the 'Canine Officer' described in the lawsuit from early on." [Docket No. 38, pp. 2–3; Docket No. 39, p. 11]. For this proposition, Plaintiffs rely

and Marion County Sheriff's Deputy Christopher Taylor for "Officer # 2." The parties' arguments with respect to both motions, as they relate to "Canine Officer" and "Officer # 2" are substantially the same and, therefore, the Court will address both motions in this section.

7. Defendants removed the action to this Court on April 11, 2002.

8. Fed.R.Civ.P. 15(c)(2) requires that "the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." There is no question that Plaintiffs' proposed amendment satisfies this requirement.

on the City's September 11, 2002 initial disclosures and the August 23, 2002 Case Management Plan. With respect to Deputy Taylor, Plaintiffs argue that he also knew "from early on that he was a potential defendant" because he was so informed at his November 12, 2002 deposition.[9] [Docket 38, p. 3; Docket No. 39, p. 12].

Conversely, Defendants argue that Plaintiffs proposed amendment does not relate back to the date of the original complaint because Plaintiffs have not satisfied the mistake requirement of Rule 15(c)(3). Defendants argue that "Plaintiffs did not mistakenly sue the wrong party. Rather, Plaintiffs had a simple lack of knowledge for a period of time about the identity of the proper parties." [Docket No. 41, ¶ 7]. Defendants are correct. As the Seventh Circuit has made clear:

> It has long been the law in this circuit that Rule 15(c)(3) permits an amendment to relate back to the original complaint only " 'where there has been an error made concerning the identity of the proper party and where that party is chargeable with knowledge of the mistake.' " *Worthington v. Wilson*, 8 F.3d 1253, 1256 (7th Cir.1993) (quoting *Wood v. Worachek*, 618 F.2d 1225, 1230 (7th Cir.1980)). Accordingly, it is equally well established that Rule 15(c)(3) " 'does not permit relation back where . . . there is a lack of knowledge of the proper party.' " *Id.*; *see also Delgado–Brunet v. Clark*, 93 F.3d 339, 344 (7th Cir.1996). In fact, this court has em-

phasized that Rule 15(c)(3) contains a separate "mistake" requirement. *See Worthington*, 8 F.3d at 1257; *Wood*, 618 F.2d at 1230. Indeed, "in the absence of a mistake in the identification of the proper party, it is irrelevant for purposes of Rule 15(c)(2) [now Rule 15(c)(3) ] whether or not the purported substitute party knew or should have known that the action would have been brought against him." *Wood*, 618 F.2d at 1230.

*Baskin v. City of Des Plaines*, 138 F.3d 701, 704 (7th Cir.1998). *See also King*, 201 F.3d 910, 914; *Wudtke v. Davel*, 128 F.3d 1057, 1060 (7th Cir.1997) ("We note in passing that it is pointless to include lists of anonymous defendants in federal court; this type of placeholder does not open the door to relation back under Fed.R.Civ.P. 15, nor can it otherwise help the plaintiff.") (internal citation omitted).

█ Like the plaintiff in *Baskin*, it is clear that Plaintiffs did not mistakenly misidentify Officer Lewis and Deputy Taylor. Plaintiffs merely did not know the identity of the officers involved in the April 27, 2001 events that allegedly led to Roddy's injuries. Despite learning Officer Lewis' and Deputy Taylor's identities prior to the expiration of the statute of limitations, Plaintiffs failed to amend their complaint until after that deadline had passed. They may not do so now. Filing a "John Doe" complaint does not toll the statute of limitations until such time as a named defendant may be substituted. *Wudtke*, 128

9. As Plaintiffs' brief makes clear, Plaintiffs also knew "from early on," or at least prior to the expiration of the statute of limitations, the correct identities of the "Canine Officer" and "Officer # 2." For reasons unclear to the Court, however, Plaintiffs chose not to amend their complaint until after the statute of limitations had run. Indeed, prior to the running of the statute of limitations, the Court, in its February 10, 2003 order, stated, "Plaintiffs shall identify with specificity the identity of the Defendants now identified as 'Canine Officer' and 'Officer # 2.' To the extent that Plaintiffs seek to add a new Defendant as a result of the foregoing identification, Plaintiffs shall file an appropriate pleading requesting to do so," [Docket No. 25]. Plaintiffs ignored this order until after that statute of limitations had expired. As explained below in detail, this choice was fatal to the Plaintiffs' motion for leave to amend and their claims against the officers on summary judgment.

F.3d at 1060, *citing Sassi v. Breier*, 584 F.2d 234, 235 (7th Cir.1978). Because Plaintiffs fail the "mistake" requirement of Rule 15(c)(3), Plaintiffs' proposed amendment does not relate back to the date of the filing of the original complaint. Accordingly, the Magistrate Judge recommends that Plaintiffs' motion for leave to file amended complaint be DENIED. *See Park v. City of Chicago*, 297 F.3d 606, 612 (7th Cir.2002) (leave to amend complaint may be denied due to futility of amendment). Furthermore, for these same reasons, the Magistrate Judge recommends that Defendants' motion for summary judgment against "Canine Officer" and "Officer # 2" be GRANTED with respect to all claims.[10]

### B. Plaintiffs' Federal Claims Against the City.

▇▇▇ To establish liability under 42 U.S.C. § 1983 against the City, Plaintiffs must go beyond proof that the City employed a tortfeasor as it is well settled—and both parties agree—that "a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). In *Monell*, the Supreme Court stated:

> We conclude, therefore, that a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.

436 U.S. at 694, 98 S.Ct. 2018. Therefore, a "municipality is only responsible for its employees' actions if taken pursuant to an unconstitutional policy or custom of the municipality itself," *Garrison v. Burke*, 165 F.3d 565, 571 (7th Cir.1999), or when a "valid policy is unconstitutionally applied by a municipal employee" who has not been adequately trained and the "constitutional wrong has been caused by that failure to train." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 387, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). While unclear, it appears that Plaintiffs present both "unconstitutional policy" and "failure to train" arguments. Therefore, the Court addresses both.

With respect to unconstitutional policies or customs, the Seventh Circuit has repeatedly stated that these can take three forms:

> (1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a "custom or usage" with the force of law; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority.

*Rasche v. Village of Beecher*, 336 F.3d 588, 597 (7th Cir.2003). Plaintiffs claim that the City's alleged unconstitutional policy falls under the first category, arguing that "the evidence showed that the City had a policy that allowed the use of canine partners in public places when the canine officers are pursuing a forcible felon. This policy directly led to Ms. Roddy being attacked by the police dog and puts the public at risk every time a police dog is used in a public place." [Docket No. 39, p. 30, citation omitted]. According to the Plaintiffs:

---

**10.** The Magistrate Judge's recommendation that summary judgment be granted applies to both state and federal claims against the un-named Defendants, as Plaintiffs' state law claims are also subject to a two-year statute of limitation. Ind.Code § 34–11–2–4.

The IPD had policies requiring canine officers *not* to release their canine partners when there is a probability that other people are around. The dogs should *not* be released from the officers' car when others are around, even for a "felon." The officer may consider releasing the dog for a "forcible felony" suspect, such as rape, murder, car-jacking, robbery, child molest, if the apprehension of the forcible felon outweighs the risks of the dog biting someone else or getting hit by a car.

[Docket No. 39, p. 7, citations omitted, emphasis added].[11]

Plaintiffs' argument falters because it is rooted upon misconstruction of the City's policy. Although the Plaintiffs stress that the City's policy "allowed the use of canine partners in public places," the evidence even when viewed in a light most favorable to Plaintiffs reflects that the City's policy is, in general, *not* to release police dogs when *individuals other* than the suspect are present. [Patton Dep., pp. 38, 41; Lewis Dep., p. 15]. The Court acknowledges that the policy allows for release of a police dog in the presence of bystanders if the officer determines that the need for apprehending the forcible felony suspect outweighs the risk of harm to someone else. This, however, does not change the Court's conclusion. "The fact that a municipal 'policy' might lead to 'police misconduct' is hardly sufficient to satisfy *Monell's* requirement that the particular policy be the 'moving force' behind a constitutional violation." *City of Oklahoma City v. Tuttle,* 471 U.S. 808, 824 n. 8, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985). *See also Feist v. Simonson,* 36 F.Supp.2d 1136,

1149 (D.Minn.1999) ("A municipal policy is not unconstitutional if it might allow for unconstitutional conduct in some instances. Rather, such a policy is unconstitutional only if it requires its officer to act in such an unconstitutional manner. The absence of such a pattern of unconstitutional misconduct must end the court's inquiry.") (internal citations omitted).

█ The Plaintiffs do not appear to argue that the City's policy regarding police dog use is facially unconstitutional. Nor can they, as it is clear that the policy is facially constitutional. "To the extent that the policy authorizes police officers to use canine force against suspects who pose a threat to an arresting officer or to the community, the policy is clearly constitutional under the dictates of *Tennessee v. Garner*[, 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985)]." *Kerr v. City of West Palm Beach,* 875 F.2d 1546, 1553 (11th Cir.1989), *citing Tennessee v. Garner,* 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985). Instead, Plaintiffs simply argue that because the municipal policy caused Roddy's alleged constitutional injury, summary judgment must be denied with respect to the § 1983 claims against the City. Not so. "In order for a § 1983 plaintiff 'to establish municipal liability on the theory that a facially lawful municipal action has led an employee to violate a plaintiff's rights,' the plaintiff 'must demonstrate that the municipal action was taken with 'deliberate indifference' as to its known or obvious consequences.'" *Rasche v. Village of Beecher,* 336 F.3d 588, 599 (7th Cir.2003), *quoting Board of the County Commissioners of Bryan County, Oklahoma v. Brown,* 520 U.S. 397, 407, 117 S.Ct. 1382, 137 L.Ed.2d

11. With respect to Plaintiffs' constitutional claims, disposition of this matter revolves around the interpretation of the City's policies on police dog use. Despite this fact, the parties have not provided the Court with a copy of the written policy. For evidence of the policy, Plaintiffs were content to rely on the deposition testimony of Michael Patton. Given that Plaintiffs did not take issue with the absence of a written policy, neither will the Court.

626 (1997). Plaintiffs have provided absolutely no argument or evidence whatsoever that the City was deliberately indifferent to the "known or obvious consequences" of allowing police officers to deploy police dogs to apprehend forcible felon suspects. Therefore, Plaintiffs have not satisfied their burden.

In a factually similar case involving the accidental shooting of an innocent bystander rather than a police dog attack, the court in *Porter v. Jameson*, 889 F.Supp. 1484, 1494 (M.D.Ala.1995), stated:

> While the [police department's] deadly force policy does not contain the words "innocent bystander," the court finds that [the policy] is sufficiently broad and specific to encompass the use of deadly force in the presence of innocent bystanders. As previously set forth, this provision forbids an officer to apply deadly force unless the threat posed by an assailant to the officer or the public outweighs the risk, generally and specifically, to the public from the use of deadly force. This regulation entails a delicate balancing of diametric and, often, competing concerns in precarious, ultra-sensitive and life-threatening situations.
>
> The court is aware that no rule will remove all the risk associated with the perils of pursuing a subject who, in the subjective, but rational and reasonable, assessment of a pursuing officer, is considered armed and dangerous. However, a regulation of this nature must provide as much protection to the public and the officer as possible. In the final analysis, a law enforcement officer must be allowed to exercise sound judgment in determining whether to return fire or fire in the first instance.... At best, a municipality can clothe well-trained police officers with the authority to react in a manner dictated by the circumstances and train them in a manner which will engender and facilitate professional decorum and eliminate the likelihood of constitutional deprivations. The court is convinced that the City of Montgomery's "custom" and "policy" regarding its police department accomplishes these salient and indispensable objectives.

The Court finds this reasoning sound and applicable to the case at hand. Like *Porter*, the City's policy allows for police dog use in the presence of innocent bystanders when the officer determines that the benefit of apprehending the forcible felony suspect outweighs the risk of potential harm to the bystander. The Court, therefore, does not conclude that the City's policy is unconstitutional. At most, Plaintiffs could establish that Officer Lewis negligently applied the policy, or failed to follow the policy at all. This, however, does not make the policy unconstitutional. Despite Plaintiffs' arguments to the contrary, the City does not have a policy of "releasing the hounds" in public places or in crowds of people.[12]

---

12. There is some dispute over whether Officer Lewis noticed if other individuals were present before the release of his police dog. Defendants allege that Lewis looked around and "saw no one else in the hospital parking lot" prior to the release of his police dog. [Docket No. 29, pp. 2–3; Lewis Dep., pp. 8–9, 15]. Plaintiffs dispute this alleged fact, maintaining that Officer Lewis could not have looked for other people "because there were numerous others in the area, including Ms. Roddy...." [Docket No. 39, pp. 4–5; Roddy Dep., pp. 45–46, 76–77, 83–84]. In addition, the parties dispute the seriousness of the suspect's alleged crime. Plaintiffs argue that the alleged crime was car theft. [Docket No. 39, p. 4]. Defendants' maintain that the radio broadcast heard by Officer Lewis reported the crime as "suspected car-jackers, who were possibly armed." [Docket No. 29, p. 2]. It is of no matter, however, to resolve these factual disputes as they are not material to the Court's inquiry. What is not in dispute is the City's policy with respect to police dog use. Whether Officer Lewis was chasing a forcible felony suspect and whether he looked for by-

To the extent Plaintiffs argue that their claims fall under either the second or third categories, such arguments must also fail. With respect to the second, the Seventh Circuit has made clear that "[w]hen a plaintiff chooses to challenge a municipality's unconstitutional policy by establishing a widespread practice, proof of isolated acts of misconduct will not suffice; a series of violations must be presented to lay the premise of deliberate indifference." *Palmer v. Marion County*, 327 F.3d 588, 596 (7th Cir.2003); *see also Tuttle*, 471 U.S. 808, 824, 105 S.Ct. 2427 ("where the policy relied upon is not itself unconstitutional, considerably more proof than the single incident will be necessary in every case to establish ... the requisite fault on the part of the municipality...."). Plaintiffs do not provide evidence of other incidents of misconduct by other officers (or other police dogs). Instead, Plaintiffs' only attempt to establish a "widespread practice" of police dog use when individuals other than the suspect are present comes by way of other instances of biting by Officer Lewis' canine partner, the dog at issue in this case. [Docket No. 39, pp. 8, 30]. Plaintiffs do not allege that these other instances of biting involve persons other than the suspect intended to be apprehended. In fact, the record reflects that every other instance of biting involved the apprehension of criminal suspects, none of which involved the accidental biting of a non-suspect. [Defs.' Interrog. Resp. No. 13]. Such evidence falls well short of the test requiring widespread unconstitutional practice "that is so well settled that it constitutes a custom or usage with the force of law." *Palmer v. Marion County*, 327 F.3d 588, 596 (7th Cir.2003), *citing Looper Maint. Serv. Inc. v. City of Indianapolis*, 197 F.3d 908, 912 (7th Cir. 1999). As the Supreme Court stated in *City of Canton*, "[t]hat a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability to the city, for the officer's shortcomings may have resulted from factors other than a faulty training program." 489 U.S. 378, 390–91, 109 S.Ct. 1197. Similarly, evidence of incidents involving only Officer Lewis and his canine, fall well short of requiring municipal liability, particularly when Roddy appears to be the only non-suspect bitten by Lewis' canine.

The third category of unconstitutional policy or custom, i.e. an allegation that the constitutional injury was caused by a person with final policymaking authority, is a non-issue. Plaintiffs have not alleged that either Officer Lewis or Deputy Taylor, the individuals who allegedly caused the constitutional harm, have final policymaking authority. Furthermore, the Seventh Circuit has been clear on this subject:

> *Every* public employee, including the policeman on the beat and the teacher in the public school, exercises authority ultimately delegated to him or her by their public employer's supreme governing organs. A police officer has authority to arrest, and that authority is "final" in the practical sense that he doesn't have to consult anyone before making an arrest; likewise a teacher does not have to consult anyone before flunking a student. That is a perfectly good use of the word "final" in ordinary conversation

standers before releasing his dog are relevant only for determining whether Officer Lewis followed the policy. This issue is not before the Court.

The Court notes that these matters would be relevant if the Court chose to retain supplemental jurisdiction over those remaining state claims which are not untimely due to the expiration of the statute of limitations. As noted below, due to the vagaries of Indiana common law and the application of various claimed immunities, the Magistrate Judge recommends that the Court decline supplemental jurisdiction over the remaining state claims.

but it does not fit the cases; for if a police department or a school district were liable for employees' actions that it authorized but did not direct, we would be back in the world of respondeat superior. To avoid this the cases limit municipal liability under section 1983 to situations in which the official who commits the alleged violation of the plaintiff's rights has authority that is final in the special sense that there is no higher authority.

*Rasche v. Village of Beecher*, 336 F.3d 588, 600 (7th Cir.2003), *quoting Gernetzke v. Kenosha Unified Sch. Dist. No. 1*, 274 F.3d 464, 469 (7th Cir.2001). Municipal liability, therefore, does not attach under this theory.

 Plaintiffs also argue that the City should be liable under § 1983 because it improperly trained its police officers in the handling and use of police dogs. To be sure, under *City of Canton*, "inadequate training" claims can form the basis of § 1983 claims under appropriate circumstances. *City of Canton*, 489 U.S. 378, 388, 109 S.Ct. 1197 ("We hold today that the inadequacy of police training may serve as a basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come in contact."). However, this is a high bar to reach and the Plaintiffs have not offered *any* evidence which would allow this Court to conclude that the standard has been met. With respect to "inadequate training" claims, the Supreme Court noted that:

> In resolving the issue of a city's liability, the focus must be on adequacy of the training program in relation to the tasks the particular officers must perform. That a particular officer may be unsatisfactorily trained will not alone suffice to

fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program. It may be, for example, that an otherwise sound program has occasionally been negligently administered. Neither will it suffice to prove that an injury or accident could have been avoided if an officer had had better or more training, sufficient to equip him to avoid the particular injury-causing conduct. Such a claim could be made about almost any encounter resulting in injury, yet not condemn the adequacy of the program to enable officers to respond properly to the usual and recurring situations with which they must deal. And plainly, adequately trained officers occasionally make mistakes; the fact that they do says little about the training program or the legal basis for holding the city liable. Moreover, for liability to attach in this circumstance the identified deficiency in a city's training program must be closely related to the ultimate injury.

*Id.* at 390–91, 109 S.Ct. 1197. Despite this admonition, Plaintiffs did not "focus on the adequacy of the training program," nor did they, as noted above, produce any evidence regarding officers or canines other than those involved in circumstances surrounding Roddy's injury. In short, Plaintiffs have failed to establish the requisite pattern of tortious conduct by inadequately trained police officers to suggest that the lack of training was the "moving force" behind Roddy's injury. *Bryan County*, 520 U.S. 397, 407–08, 117 S.Ct. 1382. Plaintiffs have presented no evidence from which to conclude that the City was "deliberately indifferent" to Roddy's rights, and therefore Plaintiffs' § 1983 claims against the City must fail.[13]

---

**13.** The parties spend considerable effort addressing the merits the underlying substantive claims. Because the Court finds no basis for municipal liability, it need not determine whether Plaintiffs actually suffered a constitutional injury.

Finally, before leaving this topic, some comment is necessary on Plaintiffs' reliance on *Kerr v. City of West Palm Beach*, 875 F.2d 1546 (11th Cir.1989). Plaintiffs state that *Kerr*, "a factually similar case, concluded that it was a question for the jury whether the city failed to train its canine units in the constitutional use of canine force and whether the city failed to adequately supervise the performance of its canine officers and dogs." [Docket No. 39, p. 30]. Without any analysis, Plaintiffs argue quite simply that since *Kerr* concluded that that case should go to a jury, so should the instant matter. Under Plaintiffs' theory, it would seem, all cases that *allege* inadequate training in the use of police dogs are required to go to a jury. Plaintiffs are mistaken.

In *Kerr*, the evidence before the court revealed that the police department had, in addition to the written policy regarding apprehension of felons, an oral policy allowing officers to use police dogs for "serious misdemeanors." *Kerr*, 875 F.2d at 1550. The court found this oral policy "significant" and the evidence showed that it was used to apprehend "individuals suspected of prowling, of drunkenness, of petty larceny, of prostitution, of traffic offenses—even individuals whose only offense was being in a city park after hours." *Id.* at 1550. In addition, the police department "had no specialized internal procedures for monitoring the performance of the canine unit." *Id.* at 1551. The plaintiffs in *Kerr* based their complaint on "[s]everal specific apprehensions involving the use of the Department's canine unit. . . ." *Id.* The *Kerr* court found that officers in the canine unit often used their police dogs to apprehend individuals suspected of minor misdemeanor offenses and that the city's canine unit used their dogs more frequently than other municipalities. *Id.* at 1556. In other words, plaintiffs in *Kerr* provided evidence of the shortcomings of multiple officers, not just a single officer or a single police dog. In addition, the *Kerr* plaintiffs focused on the adequacy of the training program as a whole. Based on this evidence and following *City of Canton*, the court found that plaintiffs' inadequate training claim should go to the jury. *Id.*

In contrast, as noted above, Plaintiffs in this action have provided no evidence regarding other canine officers or police dogs. In addition, the evidence establishes that officers should consider using their canine partners only for forcible felons. The evidence also establishes that the City also maintains ongoing training for their canine units and requires that they submit to a monthly performance test. Thus, the present case is distinguishable from the facts of *Kerr*. Plaintiffs have not established the City's actions to be deliberately indifferent to Plaintiffs' rights under *City of Canton*. "Proof of one or two incidents is not enough. [Plaintiffs] must submit evidence of deficiencies on the [City's] general training of all its canine deputies, which [they have] failed to do." *Samarco v. Neumann*, 44 F.Supp.2d 1276, 1288 (S.D.Fla.1999), *citing Cornfield by Lewis v. Consolidated High School Dist. No. 230*, 991 F.2d 1316, 1327 (7th Cir.1993) (internal citations omitted). Therefore, the Magistrate Judge recommends that Defendants' motion for summary judgment be GRANTED with respect to Plaintiffs' federal claims against the City.

### C. Plaintiffs' Remaining State Claims.

 Finally, this Court must consider the appropriateness of retaining jurisdiction over Plaintiffs' remaining state claims. *See* 28 U.S.C. § 1367. "The general rule is that when as here the federal claim drops out before trial . . . the federal district court should relinquish jurisdiction over the supplemental claim." *Van Hark-*

*en v. City of Chicago,* 103 F.3d 1346, 1354 (7th Cir.1997). "If, however, an interpretation of state law that knocks out the plaintiff's state claim is obviously correct, the federal judge should put the plaintiff out of his misery then and there, rather than burdening the state courts with a frivolous case." *Id.* at 1354. Plaintiffs' remaining state claims involve vicarious liability of the City for the torts of its employees and "strict liability for having a vicious animal." [Docket No. 39, p. 3]. The first involves various claimed immunities to Plaintiffs' claims. The second involves what Defendants describe as a "novel strict liability claim." [Docket No. 29, p. 20]. Pursuant to 28 U.S.C. 1367(c)(1), a court may decline supplemental jurisdiction if the claim involves a novel issue of state law. In addition, the Court notes that the Indiana Supreme Court recently reversed the sole case Defendants cite to defeat this claim. *See Cook v. Whitsell–Sherman,* 796 N.E.2d 271 (Ind.2003) (decided September 24, 2003). Therefore, the Court believes these issues are best decided by an Indiana court. Accordingly, the Magistrate Judge recommends that the Court decline to exercise supplemental jurisdiction over Plaintiffs' remaining state claims. The Magistrate Judge further recommends Plaintiffs' remaining state claims be REMANDED to Marion Superior Court.

## V. Conclusion

For the reasons stated above, the Magistrate Judge recommends that: (1) Plaintiffs' motion for leave to amend their complaint be DENIED; (2) Defendants' motion for summary judgement with respect to the individual Defendants Canine Officer and Officer #2 be GRANTED with respect to all claims; (3) Defendants' motion for summary judgment with respect to Defendant City of Indianapolis be GRANTED with respect to Plaintiffs' 42 U.S.C. § 1983 claims; and (4) Plaintiffs' remaining state claims against the City of Indianapolis (Counts V and VI) be REMANDED to Marion Superior Court.

Any objections to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1), and failure to file timely objections within the ten days after service shall constitute a waiver of subsequent review absent a showing of good cause for such failure.